**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **REDOX POWER SYSTEMS, LLC** | ) | **Case No. 18-23882-TJC** |
| | ) | **Chapter 11** |
| **Debtor** | ) | |

**DEBTOR'S AMENDED DISCLOSURE STATEMENT TO THE**
**CHAPTER 11 PLAN OF REORGANIZATION**

**Dated: October 30, 2018**

**Michael J. Lichtenstein (Bar No. 05604)**
**Shulman, Rogers, Gandal, Pordy & Ecker, P.A.**
**12505 Park Potomac Avenue, Sixth Floor**
**Potomac, Maryland 20854**
**TEL: (301) 230-5231**
**FAX: (301) 230-2891**
**E-mail: mjl@shulmanrogers.com**

*Counsel for the Debtor*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ........................................................................................1
     A.    Purpose of the Disclosure Statement .............................................1
     B.    Definitions.......................................................................................3
     C.    Disclaimers ....................................................................................3
II.    VOTING AND CONFIRMATION OF THE PLAN..................................4
     A.    Manner of Voting..........................................................................4
     B.    Creditors Eligible to Vote .............................................................5
     C.    Confirmation of the Plan With and Without Necessary Acceptances ...................6
     D.    Recommendation ...........................................................................7
III.   GENERAL OVERVIEW OF PLAN DISTRIBUTIONS.........................7
IV.   BACKGROUND INFORMATION ..........................................................7
     A.    The Debtor's Organization and Business ......................................7
     B.    Pre-petition Litigation ...................................................................8
     B.    Bankruptcy Proceedings ................................................................9
V.    ASSETS AND LIABILITIES...................................................................9
VI.   CHAPTER 11 EVENTS ...........................................................................9
     A.    Retention of Professionals ............................................................9
     B.    Filing of Schedules and Statement of Financial Affairs ...............9
VII.  THE DEBTOR'S PLAN OF REORGANIZATION..................................10
     A.    Classification of Claims and Equity Interests ...............................10
          1.    Unclassified Claims ...........................................................10
          2.    Classes of Claims and Equity Interests..............................11
     B.    Identification of Claims and Equity Interests Impaired by the Plan ...................11
     C.    Treatment of Claims and Equity Interests .....................................12
          1.    Detailed Discussion of the Plan's Treatment of Allowed Claim and Equity Interests.................................................12
     D.    Execution and Implementation of Plan..........................................13
          1.    Source of Funds .................................................................13
          2.    Equity Ownership ..............................................................13
     E.    Objections to Claims and Adversary Proceedings.........................13
     F.    Conditions Precedent to the Confirmation and Effective Date...............14
          1.    Conditions to Confirmation ...............................................14
          2.    Conditions to Effective Date...............................................14
     G.    Modification of the Plan ................................................................14
     H.    Executory Contracts and Unexpired Leases ..................................15
          1.    Deemed Assumption ..........................................................15
          2.    Inclusiveness of Assumed Executory Contracts and Unexpired Leases ...16
          3.    Cure of Defaults.................................................................16
          4.    Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan...............................16

i

I.     Effect of Confirmation .................................................................................17
       1.    Discharge of Debtor.......................................................................18
       2.    Revesting of Debtor's Property ......................................................18
       3.    Effect of Plan Confirmation...........................................................18
       4.    Distribution to Creditors ...............................................................18
J.     Retention of Jurisdiction ...........................................................................19
K.     Miscellaneous Provisions of the Plan .......................................................20
       1.    Exculpation and Limitation of Liability ........................................20
       2.    Terms of Injunctions or Stays .......................................................21
       3.    Binding Effect ..............................................................................22
       4.    Revocation, Withdrawal or Failure to Consummate........................22
       5.    Preservation of the Debtor's Rights ...............................................22
       6.    Effectuating Documents; Further Transactions ...........................23
       7.    Method of Distributions under the Plan.........................................23
       8.    Withholding and Reporting Requirements .....................................24
       9.    Section 1125(3) of the Bankruptcy Code........................................24
       10.   Bar Dates for Certain Claims ........................................................24
L.     General Provisions of the Plan...................................................................25
       1.    Governing Law .............................................................................25
       2.    Notices .........................................................................................26
       3.    Payment of Statutory Fees and Filing Post-Confirmation Reports............27
       4.    Severability of Plan Provisions......................................................27
       5.    Successors and Assigns..................................................................28
       6.    Entire Agreement..........................................................................28
VIII.  "BEST INTEREST" OF CREDITORS .................................................................28
A.     Liquidation Analysis .................................................................................29
IX.    TAX CONSEQUENCES....................................................................................29
A.     Tax Consequences of the Plan ...................................................................30
B.     Summary ...................................................................................................31
X.     CONCLUSION.................................................................................................31

**IN THE UNITED STATES BANKRUPTCY COURT2**
**FOR THE DISTRICT OF MARYLAND**
**(Southern Division)**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **REDOX POWER SYSTEMS, LLC** | ) | **Case No. 18-_____** |
| | ) | **Chapter 11** |
| Debtor | ) | |

**DISCLOSURE STATEMENT TO THE DEBTOR'S**
**CHAPTER 11 PLAN OF REORGANIZATION**

I.      INTRODUCTION

      A.      Purpose of the Disclosure Statement

Redox Power Systems, LLC (the "Debtor") is providing this Disclosure Statement (the "Disclosure Statement") to each person or entity holding a Claim or Equity Interest so that each such person or entity can make an informed judgment in voting on whether to accept or reject the Plan of Reorganization (the "Plan") being proposed by the Debtor pursuant to the United States Bankruptcy Code (11 U.S.C. §§ 101, et seq.) (the "Bankruptcy Code").[1] Section 1125 of the Bankruptcy Code requires a Disclosure Statement to provide information that would enable a hypothetical reasonable investor, typical of the classes of a debtor's Claimants and Equity Interest Holders, to make an informed judgment about the Plan.

The information contained in this Disclosure Statement has been prepared by the Debtor with all information available to it. The Debtor has tried to be accurate in this Disclosure Statement in all material respects. The Debtor is not able, however, to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracies. Any representations or inducements made by any person to secure your vote that are contrary to the

---

[1] As set forth in Section I.B. of this Disclosure Statement, the definitions and rules of construction set forth in Article 1 of the Plan are also applicable to and are used in this Disclosure Statement unless otherwise stated herein.

information contained in this Disclosure Statement should not be relied upon by you in arriving at your decision.

Under the Bankruptcy Code, your vote for acceptance or rejection of the Plan, may not be solicited unless you receive a copy of a disclosure statement approved by the Court prior to, or concurrently with, such solicitation.  The solicitation of votes regarding the Plan is governed by the provisions of Section 1125(b) of the Bankruptcy Code, the violation of which may result in sanctions by the Court, including disallowance of the solicited vote and loss of the "safe harbor" provisions of Section 1125(e) of the Bankruptcy Code.

On October 25, 2018, the Court conditionally approved this Disclosure Statement for use in connection with solicitation of acceptances of the Plan pending a hearing scheduled for January 10, 2019 at 10:30 am.  The Court found that the Disclosure Statement contains adequate information as required by Section 1125 of the Bankruptcy Code.  That approval, however, does not constitute a recommendation by the Court either for or against the Plan.

The Court will hold a hearing on Confirmation of the Plan beginning at 10:30 a.m. on January 10, 2019, at the United States Bankruptcy Court for the District of Maryland (Southern Division), United States Courthouse, 6500 Cherrywood Lane, Greenbelt, Maryland 20770.  At that hearing, the Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether the Plan is feasible and whether it is in the best interests of the Claimants and the Equity Interest Holders.  Any objections to Confirmation of the Plan must be filed with the Court on or before _____, 2018.  The Court will also consider at that time the tally of ballots prepared by the Debtor concerning the votes for acceptance or rejection of the Plan by the persons and entities entitled to vote on the Plan.

B.    <u>Definitions</u>

The definitions and rules of construction set forth in Article 1 of the Plan are also applicable to and are used in this Disclosure Statement unless otherwise stated herein.  You are urged to refer to the Plan when reviewing this Disclosure Statement.

C.    <u>Disclaimers</u>

This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan, and nothing contained in it shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party, except for those proceedings directly concerning the validity, enforceability or construction of the Plan.  Moreover, this Disclosure Statement should not be deemed conclusive advice on the tax and other legal effects of the Plan on holders of Claims and Equity Interests.

Except as set forth in this Disclosure Statement, the Court has authorized no representations concerning the Debtor or the value of its assets.  In voting on the Plan, you should not rely upon any representations or inducements made to secure acceptance or rejection of the Plan by the Debtor, Creditors of the Debtor or others which are other than as contained in this Disclosure Statement.  Any representations or inducements made to secure your acceptance or rejection, which are other than as contained in this Disclosure Statement and the Plan should be reported to counsel for the Debtor who, in turn, may provide such information to the Office of the United States Trustee and the Court for such action as they may deem appropriate.

The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified, and dissemination of this Disclosure Statement does not imply that there has been no change in the facts set forth herein since the date the Disclosure Statement was compiled.

3

The information contained herein has not been the subject of a certified audit. Although an effort has been made to be accurate, the Debtor is unable to warrant or represent that the information contained herein is without any inaccuracies.

II.    <u>VOTING AND CONFIRMATION OF THE PLAN</u>

BEFORE VOTING, THIS DISCLOSURE STATEMENT AND THE PLAN SHOULD BE READ IN THEIR ENTIRETY.

A.    Manner of Voting

You should use only the ballot sent to you with this Disclosure Statement to cast your vote for or against the Plan.  Ballots or votes cannot be transmitted orally.

If you wish to vote after reviewing this Disclosure Statement and Plan, please:

1.    use only the ballot enclosed with this Disclosure Statement;

2.    indicate the Class that you are voting in;

3.    indicate your vote on the enclosed ballot;

4.    indicate the amount of your Allowed Claim;[2]

5.    date, sign and mail the ballot to Michael J. Lichtenstein, Esquire, Shulman, Rogers, Gandal, Pordy & Ecker, P.A., 12505 Park Potomac Avenue, Sixth Floor, Potomac, Maryland 20854; and

6.    make sure your ballot is delivered to Mr. Lichtenstein on or before _____, 2018.

---

[2] Unless a Claimant filed a Proof of Claim, the amount of its Allowed Claim, if any, will be the amount indicated on the Debtor's schedules if such Claim was scheduled as undisputed, non-contingent, and liquidated.  A Claimant who timely filed a Proof of Claim will have an Allowed Claim in the amount thereof, unless an objection to the Claim has been or is filed.  If the holder of a Claim to which an objection has been filed in accordance with the Plan is entitled to vote for acceptance or rejection of the Plan such holder may move for temporary allowance pursuant to Federal Rule of Bankruptcy Procedure 3018(a).  Such temporary allowance shall be for voting purposes only and will not mean that the Claimant will receive a distribution with respect to the estimated amount. As set forth in the Plan, the Debtor or any other party in interest shall have ninety (90) days following the Confirmation Date to object to any Claim for payment purposes.

B.      Creditors Eligible to Vote

Only Claimants and Equity Interest Holders in Impaired classes of Claims or Equity Interests[3] are entitled to vote on the Plan.  The Class I Class Claims are Unimpaired and will not be entitled to vote because they will be deemed to accept the Plan.  The Class 2 Claims, Class 3 Claims and Class 4 Interests are Impaired under the Plan.  Impaired Classes of Claims shall have accepted the Plan if holders of at least two-thirds in amount and more than one-half in number of those voting in each Class vote to accept the Plan.  Holders of Allowed Claims who do not vote on the Plan are not counted as having voted either for or against the Plan.

Section 1129(a)(10) of the Bankruptcy Code provides that in order for a plan to be confirmed, at least one Impaired class of Claims must accept the Plan without counting the votes of insiders of such Class.  Section 101(31)(B) of the Bankruptcy Code defines "insiders" as including individuals or entities having one or more of the following relationships with the Debtor: (i) director(s) of the Debtor; (ii) officer(s) of the Debtor; (iii) person(s) in control of the Debtor; (iv) partnership(s) in which the Debtor is a general partner; (v) general partner(s) of the Debtor; or (vi) relative(s) of a general partner, director, officer, or person in control of the Debtor.

If the voting members of an Impaired Class do not vote unanimously for the Plan, but nonetheless vote for the Plan by the requisite amounts of the Claims or Equity Interests that are actually voted, the Plan at a minimum must provide that each member of the Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  As set forth in the Liquidation Analysis at Section VIII of this Disclosure Statement, the Debtor believes that the Plan fulfills this requirement.

---

[3] The concept of when a Class of Claims or Equity Interests is "impaired" is defined in Bankruptcy Code Section 1124.

The Debtor may dispute the Proofs of Claim filed by certain Claimants or otherwise listed in the Debtor's schedules. Persons or entities whose Claims are disputed may not participate in distributions under the Plan unless, and only to the extent that, the Court allows such Claims. The schedules of the Debtor showing the amount of Claims against, and Equity Interests in, the Debtor, and whether they are disputed can be inspected at the United States Bankruptcy Court for the District of Maryland (Southern Division), United States Courthouse, 6500 Cherrywood Lane, Greenbelt, Maryland 20770, and are available for review through the Court's electronic ecf/pacer docket maintained for this case.

C.   Confirmation of the Plan With and Without Necessary Acceptances

Once it is determined which Impaired Classes have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If the Plan is accepted by all Impaired Classes, the Court will confirm the Plan upon its determination that the other conditions set forth in Section 1129(a) of the Bankruptcy Code are met.

The Plan may be confirmed even if it is not accepted by all Impaired Classes. If the Court finds that at least one Impaired class of Claims (excluding any acceptance by the Debtor's "insiders", as defined in Section 101(31) of the Bankruptcy Code) has accepted the Plan and that certain additional conditions are met, the Plan may be confirmed over the objections of such non-accepting Impaired classes. The conditions under which the Plan may be confirmed despite the non-acceptance, or objection, of an Impaired class are set forth in the so-called "cram down" provisions of Section 1129(b) of the Bankruptcy Code.

Confirmation of the Plan will discharge the Debtor from all of its pre-petition debts, except as otherwise provided in the Plan, the Order of Confirmation, or Section 1141(d) of the Bankruptcy Code. Confirmation makes the Plan binding on the Claimants, Equity Interest Holders, and other parties in interest regardless of whether they have accepted the Plan.

D.    Recommendation

The Debtor believes that the Plan provides the greatest and earliest possible recovery to all Creditors and that acceptance of the Plan is in the best interest of all Creditors. Accordingly, the Debtor recommends that all parties in interest vote to accept the Plan.

III.    GENERAL OVERVIEW OF PLAN DISTRIBUTIONS

Set forth in greater detail elsewhere in this Disclosure Statement is a description of the classification of Claims and Equity Interests, the payments to be made to Claimants, the applicable bankruptcy provisions, and the feasibility of the Plan. However, the Debtor believes that a broad overview of how Claims are classified will be helpful for your understanding of the Plan.

The following "Table 1, Quick Reference to Classification of Claims and Equity Interests" summarizes how Claims and Equity Interests are classified under the Plan.

| TABLE 1:  QUICK REFERENCE GUIDE TO CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS | | |
|---|---|---|
| CLASS | GENERAL DESCRIPTION OF CLASS | EXAMPLES OF TYPES OF CLAIMS IN CLASS |
| Class 1 Claims | Priority Claims | Employees |
| Class 2 Claims | DIP Claim | Rich Clay |
| Class 3 Claims | Allowed General Unsecured Claims | Pre-Petition Unsecured Claims |
| Class 4 Interests | Allowed Equity Interests of the Debtors members | The holders of membership interests in the Debtor |

IV.    BACKGROUND INFORMATION

A.    The Debtor's Organization and Business

The Debtor develops distributed generation systems that include advanced solid oxide fuel cell technology. The Debtor's products will drastically reduce the size, weight and cost of on-site generation of electricity while also providing high quality heat for combined heat and

power applications.  The Debtor's principal place of business located at 4467 Technology Drive, Suite 2107, Bldg 387, College Park, Maryland 20742.

B.  Pre-petition Litigation

The Debtor was formed in May, 2012 and was governed by a five founding Board Directors. In February, 2014, after an internal dispute, the chairman of the Board of Directors and the CEO resigned their positions but remained as directors members of the Debtor.  Thereafter, several lawsuits followed.  In May 2014, the two directors who had resigned their positions, Messrs. Thurber and Citrin, filed suit in the Circuit Court for Howard County, Maryland seeking company information. The case was resolved by providing some, but not all of the demanded information. Citrin and Thurber filed a second lawsuit alleging that one of the other directors was not entitled to a vote on the Board.  The court ruled in the Debtor's favor on this lawsuit.

After the second litigation, the Debtor's Board voted, by a majority of 3, to remove Thurber and Citrin from the Board and to repurchase their membership interests, as provided in the Debtor's operating agreement. When Citrin and Thurber refused to cash the repurchase checks, the Debtor filed a lawsuit and Citrin and Thurber countersued arguing that the Debtor had not complied with the operating agreement in removing them from the Board.  The court agreed that the board members could not be removed without amending the operating agreement and the Debtor has appealed this decision but is not pursuing the appeal.

Subsequently, the Debtor amended the operating agreement and again removed Citrin and Thurber as directors.  About a week or so before the Petition Date, Citrin and Thurber filed a new lawsuit seeking to overturn their removal as directors and seeking additional information from the Debtor.  That lawsuit has been stayed.

C.     Bankruptcy Proceedings

On October 19, 2018, the Debtor instituted this Chapter 11 proceeding (the "Petition Date"). Since the Petition Date, the Debtor has continued in possession of its property and assets and the management of its business in this Bankruptcy Case as Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. The Chapter 11 proceeding was filed because the debtor had insufficient cash flow to continue operations and had to borrow $93,000 in the weeks before the filing. The purpose of the filing is to allow the Debtor to restructure its debt obligations and to emerge as a reorganized debtor so as to attain its full potential.

V.     ASSETS AND LIABILITIES

The Debtor's principal asset is intellectual property, inventory and employees. The Debtor's liabilities as of the Petition Date are as follows:

> Priority Claims - $63,198.75
>
> DIP Claim - $93,000.00
>
> Unsecured Claims - $3,749,530.37

VI.    CHAPTER 11 EVENTS

A.     Retention of Professionals

The Debtor has filed an application to employ the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A., as its general bankruptcy counsel.

B.     Filing of Schedules and Statement of Financial Affairs

On the Petition Date, the Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs.

## VII.    THE DEBTOR'S PLAN OF REORGANIZATION

The Disclosure Statement's summary of the Plan is not a substitute for, and is qualified by, the full text of the Plan itself, which accompanies this Disclosure Statement.  ALL CREDITORS, EQUITY INTEREST HOLDERS AND ALL PARTIES IN INTEREST ARE URGED TO READ THE PLAN CAREFULLY.  The Debtor believes that the Plan is feasible, fair and equitable and does not discriminate unfairly.

### A.    Classification of Claims and Equity Interests

The Plan defines and classifies "Claims" in accordance with the Bankruptcy Code and provides different treatment for different Classes of Claims and Equity Interests.  As described more fully below, the Plan generally provides, separately by Class, that the holders of the Claims will receive various types of consideration in satisfaction of their Claims.  The treatment provided for Allowed Claims under the Plan is in full settlement, satisfaction and discharge of all such Claims.  Upon entry of the Confirmation Order, the Debtor will be discharged from all Claims that arose before entry of the confirmation Order, except for payments and distributions provided for in the Plan, in the Confirmation Order or as otherwise provided by the Bankruptcy Code.

#### 1.    Unclassified Claims

Administrative Expense Claims and Priority Tax Claims have not been classified in accordance with Section 1123(a)(1) of the Bankruptcy Code.  A description of these Claims is as follows:

##### 1.1    Administrative Expense Claims

Administrative Expense Claims are Claims against the Debtor for fees, costs, and expenses incurred during the Bankruptcy Case which are allowed under Section 503(b) of the Bankruptcy Code.  Such Administrative Expense Claims include all actual and necessary costs and expenses of preserving the Debtor's estate.

      1.2     <u>United States Trustee's Fees</u>

      The United States Trustee's Fees are the fees Debtor and/or the Reorganized Debtor are required to pay to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

      2.     <u>Classes of Claims and Equity Interests</u>

      The Plan provides for separation of the Debtor's Claimants and Equity Interest Holders into four (4) separate Classes. Class 1 is Unimpaired. Classes 2, 3 and 4 are Impaired. The Classes of Claims and Equity Interests are:

      2.1     <u>Class 1 Claim</u>

      This Class consists of priority claims, if any. The Class 1 Claims are not impaired.

      2.2     <u>Class 2 Claim</u>.

      This Class consists of the DIP claim. The Class 2 Claim is impaired.

      2.3     <u>Class 3 Claims</u>

      This Class consists of the Unsecured Claims. The Class 3 Claims are Impaired.

      2.4     <u>Class 4 Interests</u>

      This Class consists of the Allowed Equity Interests of the Debtor. Class 4 Interests are Impaired and will have their ownership interests cancelled.

      B.     <u>Identification of Claims and Equity Interests Impaired by the Plan</u>

      Classes 2, 3 and 4 are Impaired under the Plan. The members of Class 2, Class 3 and Class 4 are entitled to vote to accept or reject the Plan. Impaired Classes shall have accepted

the Plan if holders of at least two-thirds in amount and more than one-half in number of those voting in each Class vote to accept the Plan.

    C.    <u>Treatment of Claims and Equity Interests</u>

    The Plan's treatment of Allowed Administrative Expenses, the United States Trustee Fees, and each Class of Allowed Claims and Allowed Equity Interests is summarized below.

    1.    <u>Detailed Discussion of the Plan's Treatment of Allowed Claims and Equity Interests</u>

    1.1    <u>Allowed Administrative Expenses</u>

    Administrative Expense Claims of Professionals shall be paid from the Debtor's funds.

    1.2    <u>United States Trustee's Fees</u>

    The Debtor and/or the Reorganized Debtor shall continue to timely pay all fees required to be paid to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6).

    1.3    <u>Classes of Claims and Interests</u>

    1.3.1    <u>Class 1 Claim</u>

    This Class consists of the Debtor's unpaid post-petition expenses and fees to professionals and any employee priority claims. These claims will be paid in full.

    1.3.2    <u>Class 2 Claim (Rich Clay DIP Claim)</u>

    This claim will be paid in full on demand no earlier than two months after entry of a final Order confirming the Plan or the holder of this claim may choose to accept a pro rata share of interests in the Reorganized Debtor.

### 1.3.3    Class 3 Claims (Allowed Unsecured Claims)

This Class consists of the creditors holding the Allowed Unsecured Claims.  The holder of these claims may choose to receive a pro rata share of a membership interest in the Reorganized Debtor or to be paid twenty percent (20%) of the claims on or before the one year anniversary of the Confirmation Date.

### 1.3.4    Class 4 Equity Interests (Allowed Equity Holders)

This Class consists of the Debtor's equity interest holders. The holders of these interests shall forfeit their membership interests in the Debtor and shall have no interest in the Reorganized Debtor.  This Class is Impaired.

### D.    Execution and Implementation of Plan

#### 1.    Source of Funds

The funds necessary to pay all Allowed Claims shall be derived from the Debtor's operations and from the DIP Loan.

#### 2.    Equity Ownership

The Debtor shall continue to exist with the new equity interest holders as set forth previously.  After confirmation, the operating agreement shall be amended to reflect the revised membership interests.  The officers and directors shall remain in their positions post-confirmation.

### E.    Objections to Claims and Adversary Proceedings

Objections to Claims or pleadings under Section 510(c) of the Bankruptcy Code to subordinate such Claims, motions to estimate such Claims under Section 502(c) of the Bankruptcy Code or any other adversary proceedings or contested matters contesting the validity of Claims, shall be filed by the Debtor or any party-in-interest with the Court and served upon the holder of

such Claim to which such objections are made not later than ninety (90) days after the Confirmation Date.

F.      Conditions Precedent to the Confirmation and Effective Date

1.      Conditions to Confirmation.  The Confirmation hereof is subject to the satisfaction or due waiver of the following conditions precedent: (i) the Confirmation Order shall be in form and of a substance acceptable to the Debtor, and shall become a Final Order; and (ii) the statutory fees then owing to the United States Trustee shall have been paid in full.

2.      Conditions of Effective Date.  The Effective Date hereof is subject to the satisfaction or due waiver of the following conditions precedent: (i) the conditions to Confirmation have been satisfied; and (ii) Cash shall be available to enable the Reorganized Debtor to timely make all required payments under the Plan.

G.      Modification of the Plan

Modifications to the Plan may be proposed in writing by the Debtor at any time before or after the entry of the Confirmation Order provided that the Plan, as modified, meets the requirements of Section 1127 of the Bankruptcy Code.  Section 1127 of the Bankruptcy Code allows modifications to be filed before the Confirmation Order is entered so as long as the Plan, as modified, meets the requirements of Section 1122 (Classification of Claims and Interests) and Section 1123 (Contents of the Plan) of the Bankruptcy Code.  Any holder of a Claim that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, such Plan as modified, unless within the time fixed by the Court, such Claimant changes its previous acceptance or rejection.

Before or after the Confirmation Date, the Reorganized Debtor may, with the approval of the Court, and so long as it does not materially and adversely affect the interests of

creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or amend the Plan, in such manner as may be necessary to carry out the purpose and effect of the Plan.

The Debtor reserves the right, in accordance with the Bankruptcy Code, to amend and modify this Plan prior to the Confirmation Date in any manner they determine is appropriate or necessary, subject to the written consent of the Lender.

In the event the Debtor, in accordance with the provisions of Section 1129(b) of the Bankruptcy Code, seeks confirmation of this Plan over the objection of a Claim or Equity Interest and/or Class of Claims or Equity Interests that has rejected this Plan and the Court determines that a provision of the Plan renders this Plan, as presented, unconfirmable, the Debtor may, in its discretion amend the Plan at the Confirmation Hearing by deleting or modifying such provision so as to render the Plan confirmable.

H.    Executory Contracts and Unexpired Leases

1.    Deemed Assumption.  Except as otherwise provided in the Plan or provided on a Schedule attached to the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, as of the Effective Date, the Reorganized Debtor shall be deemed to have assumed each executory contract and unexpired lease to which it is a party, unless such contract or lease (i) was previously assumed, assumed and assigned, or rejected by the Debtor; (ii) previously expired or terminated pursuant to its own terms; (iii) is the subject of a motion to reject and/or adversary proceeding filed on or before the Confirmation Date, or (iv) is scheduled as rejected on the schedule attached to the Plan.  The Confirmation Order shall constitute an order of the Court under Section 365 of the Bankruptcy Code approving the contract and lease assumptions or rejections described in the Plan, as of the Effective Date.

2.      Inclusiveness of Assumed Executory Contracts and Unexpired Leases. Each executory contract and unexpired lease to be assumed or rejected pursuant to the Plan shall include all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease.

3.      Cure of Defaults.  Except as may otherwise be agreed to by the parties, within sixty (60) days after the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any executory contract or unexpired lease assumed, or assumed and assigned, by the Debtor or Reorganized Debtor pursuant to the Plan in accordance with Section 365(b)(1) of the Bankruptcy Code.  All disputed defaults or any disputed matter concerning a Cure shall be cured either within thirty (30) days of the entry of a Final Order determining the amount, if any, of the Debtor's or Reorganized Debtor's liability with respect thereto, or as may otherwise be agreed to by the parties.

4.      Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 11.1 of the Plan must be filed with the Court and served upon the Debtor or Reorganized Debtor or as otherwise may be provided in the Confirmation Order, by no later than twenty (20) days after entry of the Confirmation Order, or in the case of contracts or leases subject to a modification of Schedule 11.1(a) to the Plan, such claims shall be filed no later than twenty (20) days after service of the modification.  Any Claims not filed within such time will be forever barred from assertion against the Debtor and the Reorganized Debtor.  All Allowed Claims arising from the rejection of executory contracts and unexpired leases shall be treated as Allowed General Unsecured Claims under the Plan.

I.    Effect of Confirmation

1.    Discharge of Debtor.

Except as otherwise expressly provided herein to the contrary, the rights afforded in this Plan shall be in exchange for and in complete satisfaction, settlement, discharge and release of all Claims of any nature whatsoever, including any interest, if any, accrued thereon from and after the Petition Date to the Confirmation Date, against the Debtor, the debtor-in-possession, the Reorganized Debtor or any of Debtor's assets.  Except as otherwise expressly provided herein to the contrary, entry of the Confirmation Order (subject to the occurrence of the Effective Date) shall act as a discharge of all Claims against and debts of, and Security Interests on the Debtor's and Reorganized Debtor's assets, arising at any time before the Confirmation Date, and all Claimants and Equity Interest Holders shall be precluded from asserting against the Debtor, the Reorganized Debtor or their assets any other or further Claim or Equity Interest based on any act or omission, transaction or other activity of any kind or nature that occurred prior to the Confirmation Date; provided, however, that nothing contained in this Plan shall alter the legal, equitable or contractual rights of any Claimant or Equity Interest holder specifically designated as being unimpaired under this Plan, it being specifically intended that all such rights are to remain unaltered by this Plan.  In accordance with Section 524 of the Bankruptcy Code, the discharge provided by this Section and Section 1141 of the Bankruptcy Code shall act as an injunction against the commencement or continuation of any action, employment of process, or act to collect, offset, or recover the Claims and Equity Interests discharged hereby.  Except as otherwise expressly provided in this Plan and/or the Confirmation Order, all Persons who have held, hold, or may hold Claims against, or Equity Interests in, the Debtor shall be permanently enjoined, on and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest; (ii) the enforcement, attachment,

17

collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor on account of any such Claim or Equity Interest; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest; and (iv) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Equity Interest. The foregoing injunction shall extend to successors of the Debtor (including, without limitation, the Reorganized Debtor and the Debtor) and their respective properties and interests in property.

2.    <u>Revesting of Debtor's Property</u>

Except as specifically provided to the contrary in the Plan, Confirmation Order or Bankruptcy Code, on the Effective Date the Reorganized Debtor shall be revested with all of the property of the Debtor's Estate, including, without limitation, any claims free and clear of all Claims, liens, charges and other interests arising prior to the Effective Date.  On the Effective Date, the Reorganized Debtor may operate its business and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and without further supervision by the Court.  Without limiting the generality of the foregoing, the Reorganized Debtor may, without application to or approval by the Court, pay fees and expenses of Professionals incurred after the Effective Date.

3.    <u>Effect of Plan Confirmation</u>

Pursuant to Section 1141(a) of the Bankruptcy Code, confirmation of the Plan binds the Debtor, any person issuing securities under the Plan, any Claimant and any Equity Interest Holder, whether or not such Claimant or Equity Interest Holder has accepted the Plan.

4.    <u>Distribution to Creditors</u>

The Debtor shall make all distributions required under the Plan.

J.      Retention of Jurisdiction

The Court shall, to the fullest extent permitted by law, retain exclusive jurisdiction from and after the Confirmation Date for the purpose of determining all matters, disputes and other issues presented by or arising in, arising under or related to the Bankruptcy Case and the Plan, including, without limitation:

Determining any and all objections to Claims or Equity Interests and/or adversary proceedings contesting the validity of Claims or Equity Interests, or any estimation of Claims.

Determining any and all disputes arising in, under or relating to the Plan.

Determining any and all pending motions for assumption or rejection of Executory Contracts and unexpired leases and the allowance of any Claims resulting from the rejection thereof or from the rejection of Executory Contracts or unexpired leases pursuant to the Plan.

Determining any and all applications, adversary proceedings (whether pending or contemplated), and contested and litigated matters commenced in connection with the Bankruptcy Case before or after the Confirmation Date.

Modifying any provision of the Plan to the full extent permitted by the Bankruptcy Code.

Correcting any defect, curing any omission, or reconciling any inconsistency in the Plan, the exhibits to the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and effect of the Plan.

Determining such other matters as may be provided for in the Confirmation Order or as may from time to time be authorized under the provisions of the Bankruptcy Code or other applicable law.

Enforcing all orders, judgments, injunctions, and rulings entered in connection with the Bankruptcy Case.

19

Entering such orders as may be necessary or appropriate in the aid of confirmation and to facilitate in proper consummation and implementation of the Plan.

Entry of an order, including injunctive relief, necessary to enforce the rights, title, interest, and powers of the Debtor and/or Reorganized Debtor and imposition of such limitations of such rights, title, interest, and powers as the Court may deem necessary.

Considering any act concerning the compromise and settlement of any Claim or cause of action by or against the Debtor's Estate.

Determining any and all applications for allowances of compensation and reimbursement of Professionals for services rendered prior to the Confirmation Date and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or Plan.

Such other purposes as the Court deems necessary and reasonable to carry out the intent and purposes of the Plan.

THE FOREGOING CONSTITUTES ONLY A SUMMARY OF THE ESSENTIAL PROVISIONS OF THE PLAN. HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE ADVISED TO REVIEW THE PLAN CAREFULLY.

K.    <u>Miscellaneous Provisions of the Plan</u>

1.    <u>Exculpation and Limitation of Liability</u>

The Reorganized Debtor and any and all of its respective present or former members, officers, directors, employees, partners, advisors, attorneys, or agents, or any of its successors or assigns, shall not have or incur any liability to any holder of a Claim or an Equity Interest, or any other party-in-interest, or any of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the administration of the Bankruptcy Case, the solicitation of acceptances of the Plan, the pursuit of

Confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct or gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the foregoing shall not operate as a waiver of, or release from, any of the obligations arising under the Plan or the final executed versions of the related documents and agreements.

Notwithstanding any other provision hereof, no holder of a Claim or Equity Interest, no other party-in-interest, none of their respective agents, employees, equity holders, partners, members, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Debtor, the Reorganized Debtor, the Estate, the Debtor, or any of their respective present or former members, officers, directors, employees, or partners, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the administration of the Bankruptcy Case, the solicitation of acceptances of the Plan, the pursuit of Confirmation of the Plan, the consummation of the Plan, or the administration hereof or the property to be distributed thereunder, except for their willful misconduct or gross negligence.

2.      Terms of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays in effect in the Bankruptcy Case under Sections 105 or 362 of the Bankruptcy Code or any order of the Court, and extant on the Confirmation Date (excluding any injunctions or stays contained herein or in the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained herein or the Confirmation Order shall remain in full force and effect in accordance with their terms.

3.     <u>Binding Effect</u>

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims against and Equity Interests in the Debtor, their respective successors and assigns, including the Reorganized Debtor, and all other parties-in-interest in the Bankruptcy Case.

4.     <u>Revocation, Withdrawal or Failure to Consummate</u>

The Debtor reserves the right, subject to the written consent of the Lender, to revoke or withdraw the Plan at any time prior to the Confirmation Date and to file other plans of reorganization.   If the Debtor revokes or withdraws the Plan, or if Confirmation or consummation hereof does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise embodied herein (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void; and (iii) nothing contained herein, and no acts taken in preparation for consummation hereof, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor or any other Person, (b) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (c) constitute an admission of any sort by the Debtor or any other Person.

5.     <u>Preservation of the Debtor's Rights</u>

Except as otherwise provided in the Plan, or in any contact, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, that the

Reorganized Debtor or its Estate may hold against any Person or entity without the approval of the Bankruptcy Court. The Reorganized Debtor, or their successor(s) or agent(s), may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of the Reorganized Debtor.

6.    <u>Effectuating Documents; Further Transactions</u>

The Manager, President of the Manager, or any other appropriate officer of the Debtor or Reorganized Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such other actions, as may be necessary or appropriate, to effectuate and further evidence the terms and conditions of the Plan. The secretary or other appropriate officer of the Debtor or Reorganized Debtor shall be authorized to certify or attest to any of the foregoing actions in accordance with applicable law.

7.    <u>Method of Distributions Under the Plan</u>

<u>In General</u>. Except as otherwise provided in the Plan, all distributions under the Plan shall be made by the Debtor to the holder of each Allowed Claim at the address of such holder as listed on the Schedules, unless the Debtor or the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such holder that provides an address for such holder different from the address reflected on the Schedules.

<u>Distributions of Cash</u>. Any payment of Cash made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank, by electronic wire, or by other form of wire transfer.

<u>Timing of Distributions</u>. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

23

Minimum Distributions.  No payment of Cash less than one hundred ($100) shall be made by the Debtor to any holder of a Claim.

8.    Withholding and Reporting Requirements

In connection with the Plan and all distributions thereunder, the Debtor shall, to the extent applicable as determined in his, her or its sole discretion, as applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions under the Plan shall be subject to any such withholding and reporting requirements.  The Debtor shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements.

9.    Section 1125(e) of the Bankruptcy Code

As of the Confirmation Date, the Debtor and Reorganized Debtor shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

10.    Bar Dates for Certain Claims

Administrative Expense Claims.  The Confirmation Order shall establish an Administrative Expense Bar Date for the filing of all requests for Administrative Expenses (other than Administrative Expense requests of Professionals), which date shall be thirty (30) days after the Confirmation Date.  Holders of asserted Administrative Expenses, other than Professionals or for United States Trustee fees, not paid and not arising out of transactions in the ordinary course of business prior to the Confirmation Date must submit Applications for the Allowance of Administrative Expenses on or before such Administrative Expense Bar Date or be forever barred from doing so.  The notice of Confirmation to be delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) shall set forth such date and constitute notice of this Administrative Expense Bar Date. The Debtor or the Reorganized Debtor, as the case may be, shall have sixty (60) days (or such

24

longer period as may be allowed by order of the Court) following the Administrative Expense Bar Date to review and object to such Administrative Expenses before a hearing for determination of allowance of such Administrative Expenses.

Professional Fee Claims.   Unless otherwise agreed by the Debtor or Reorganized Debtor, all final requests for compensation or reimbursement of Administrative Expenses of Professionals pursuant to Sections 327, 328, 330, 331, or 503(b) of the Bankruptcy Code for services rendered to the Debtor prior to the Effective Date must be filed and served on the Debtor or Reorganized Debtor and its counsel and the United States Trustee no later than sixty (60) days after the Effective Date.  Objections to applications of such Professionals or other entities for compensation or reimbursement of expenses must be filed and served on the Debtor or Reorganized Debtor and its counsel and the requesting Professional or other entity no later than twenty (20) days (or such longer period as may be allowed by order of the Court) after the date on which the applicable application for compensation or reimbursement was served.  If the Debtor or the Reorganized Debtor and any such Professional cannot agree on the amount of fees and expenses to be paid to such party, or if the United States Trustee objects to such Administrative Expenses of Professionals, the amount of fees and expenses shall be determined by the Court.

L.    General Provisions of the Plan

1.    Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under the Plan shall be governed by, construed by, and enforced in accordance with, the internal laws of the State of Maryland.

    2.    <u>Notices</u>

From and after the Effective Date, all notices, requests, demands or other communications hereunder shall be in writing and delivered by hand delivery, or by facsimile or e-mail and by first-class mail, postage and fees prepaid, and shall be addressed:

(a)    If to Debtor:

Redox Power Systems, LLC
4467 Technology Drive
College Park, MD 20742
Attn:  Craig W. Dye, Chief Executive Officer
TEL:  (301) 832-5134
Email: <u>craig@redoxpowersystems.com</u>

With a copy to:

Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
12505 Park Potomac Avenue, Sixth Floor
Potomac, Maryland 20854
Attn:   Michael J. Lichtenstein, Esquire
TEL:   (301) 230-5231
Email: <u>mjl@shulmanrogers.com</u>
*Counsel for Debtor*

(b)  if to any holder of a Claim, to such holder at the address reflected on the most recently filed Proof of Claim filed by such creditor in the Bankruptcy Case, or if no Proof of Claim was filed, then to such creditor's last known address according to the Debtor's Schedules or Debtor's books and records, or at any other address as is designated in writing by such creditor.

(c)  if to any holder of an Equity Interest, to such holder at the address reflected on the most recently filed Proof of Interest filed by such Equity Interest Holder in the Bankruptcy Case, or if no Proof of Interest was filed, then to such Equity Interest Holder's last known address according to the Debtor's books and records, or at any other address as is designated in writing by such Equity Interest Holder.

All such communications shall be deemed to have been delivered: (i) when personally delivered by hand, if personally delivered; (ii) three (3) Business Days after being mailed, by first-class mail, postage prepaid and sent by facsimile or e-mail; or (iii) the next Business Day after timely delivery to a courier, if sent by overnight courier.  Any person entitled to receive notice under the Plan may change such person's address or other information by notice given in accordance with the Plan.

       3.      <u>Payment of Statutory Fees and Filing Post-Confirmation Reports</u>

All fees payable under Section 1930 of Title 28 of the United States Code, as determined by the Court at the Confirmation Hearing, will be paid on or before the Effective Date.  The Reorganized Debtor will pay, as required by 28 U.S.C. § 1930(a)(6), a quarterly fee to the United States Trustee for each calendar quarter (including any fraction thereof) until these cases are converted, dismissed, or closed pursuant to a final decree.

Following the Effective Date, the Debtor will no longer be required to file monthly operating reports.  Instead, the Reorganized Debtor will file with the Court and serve on the United States Trustee quarterly financial reports, in a format acceptable to the United States Trustee, for each quarter (or portion thereof) until the cases are converted, dismissed, or closed pursuant to a final decree.  The quarterly financial reports will be filed within thirty (30) days following the end of each calendar quarter.

       4.      <u>Severability of Plan Provisions</u>

If, prior to Confirmation, any term or provision of the Plan is held by the Court to be invalid, void, or unenforceable, the Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision, to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such alteration or interpretation, with respect to the terms and provisions of the Plan, the terms of this section shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered, interpreted or adjusted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

5.    <u>Successors and Assigns</u>

The rights, benefits and obligations of all Persons named or referred to in the Plan shall be binding on, and shall inure to the benefit of, their respective heirs, executors, administrators, personal representatives, successors or assigns, including any trustee that may subsequently be appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

6.    <u>Entire Agreement</u>

The Plan (including any documents, exhibits and annexes) constitutes the entire Plan and there are no representations, warranties, covenants or obligations except as set forth herein. Except as expressly provided herein to the contrary, the Plan supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto relating to any transactions contemplated hereunder. In the event there is any inconsistency between the Plan and any Plan document, the terms of the Plan shall govern.

VIII.    <u>"BEST INTEREST" OF CREDITORS</u>

Notwithstanding acceptance of the Plan by Creditors, in order to confirm the Plan, the Court must independently determine that the Plan is in the best interest of all Classes of Creditors. The "best interest" test requires that the Court find that each member of each Impaired Class of Claims either (1) has accepted the Plan, or (2) will receive property which has a present value at

least equal to the distribution which each person or entity would receive if the Debtor were instead liquidated under Chapter 7 of the Bankruptcy Code on the Effective Date.

A.    Liquidation Analysis

The starting point for determining whether the Plan meets the "best interest" test is a determination of the liquidation value of the Debtor's assets. In determining a potential Chapter 7 liquidation distribution, the delay caused by the conversion to the Chapter 7 case should be taken into account. The value of the assets must then be reduced by the costs of liquidation under Chapter 7 of the Bankruptcy Code, including, but not limited to, a Chapter 7 trustee's statutory fees, the fees and expenses of Professionals retained by the Chapter 7 trustee and the costs incurred by the estate in administering the Chapter 7 case. In the event of a sale, the costs of the sale of the assets, including auctioneer's and other sales commissions, advertising costs, and the cost of maintenance of assets pending sale should also be considered. Once the value of a Chapter 7 distribution to the impaired Class is determined, it is then compared to the treatment proposed under the Plan. Only if a plan proposes a greater recovery than under a liquidation can it be said to satisfy the "best interest" test.

In this case, as set forth on Exhibit A, the Plan proposed by the Debtor provides a greater recovery than under a hypothetical liquidation. In a liquidation, unsecured creditors would receive nothing. Under the Plan, unsecured creditors will receive payment of twenty percent (20%) of their Allowed Claims. Attached to this Disclosure Statement as Exhibit B are the Debtor's cash flow projections.

IX.    TAX CONSEQUENCES

IN VIEW OF THE COMPLEXITIES OF THE TRANSACTIONS CONTEMPLATED UNDER THE PLAN AND THAT NEITHER RULINGS FROM THE INTERNAL REVENUE SERVICE NOR OPINIONS OF COUNSEL HAVE BEEN REQUESTED OR OBTAINED

29

WITH RESPECT TO ANY OF THE TAX ASPECTS OF THE PLAN, THERE CAN BE NO ASSURANCE THAT THE TAX CONSEQUENCES SET FORTH HEREIN WILL RESULT.

      A.    <u>Tax Consequences of the Plan</u>

      Implementation or non-implementation of the Plan may modify, or affect the timing of, the federal income tax treatment of the Claims or Interests of Debtor's Claimants or Equity Interest Holder.  In addition, state tax consequences may flow from the Plan, depending on a Claimant's or Equity Interest Holder's state of residence.  Differences among Claimants or Equity Interest Holders, including differences in form of organization, methods of accounting, and prior tax-related actions taken with respect to their Claims or Interests, may have a material effect on the tax treatment of the Plan to a Claimant or Equity Interest Holder.

      Pursuant to the Plan, Holders of Class 1, Class 2 and Class 3 Claims may receive a cash distribution on account of their Claims.  A Holder that receives cash in exchange for its Claim pursuant to the Plan will generally recognize income, gain or loss for federal income tax purposes in an amount equal to the difference between (i) the amount of cash received in exchange for its Claim, and (ii) the Creditor's adjusted tax basis in its Claim.  The character of such gain or loss as capital gain or loss or as ordinary income or loss will be determined by a number of factors, including the tax status of the Holder, the nature of the Claim in such Holder's hand, whether the Claim constitutes a capital asset in the hands of the Holder, whether the Claim was purchased at a discount, and whether and to what extent the Holder has previously claimed a bad debt deduction with respect to its Claim.

      To the extent that any amount received by a Holder of a Claim is attributable to accrued interest, such amount should be taxable to the Holder as interest income.  Conversely, a Holder of a Claim may be able to recognize a deductible loss (or, possibly, a write-off against a reserve for worthless debts) to the extent that any accrued interest on the Claims was previously

included in the Holder's gross income but was not paid in full by Debtor.  Such loss may be ordinary, but the tax law is unclear on this point.

     B.    <u>Summary</u>

The foregoing is intended only to be a general description of some of the federal income tax consequences to the Debtor and Equity Interest Holders resulting from the debt restructuring under the Plan.

Each Creditor, Equity Interest Holders and any other party affected by the Plan should consult his or her own personal tax advisor for a complete analysis of the tax consequences resulting from confirmation and execution of the Plan.

X.    <u>CONCLUSION</u>

The Debtor believes that the proposed Plan is feasible, in the best interests of Claimants and Equity Interest Holders, is fair and equitable and does not discriminate unfairly.  The Debtor thus recommends acceptance of the Plan.

Respectfully submitted,

REDOX POWER SYSTEMS, LLC

By:    /s/ David J. Buscher
        Name:  David J. Buscher
        Title:   Chief Operating Officer

Date:  October 30, 2018

F: 131404.00004
42450229.1

31

**Redox Power Systems, LLC**
**Estimated Payments to General Unsecured Creditors Under a Chapter 7 Liquidation**
**Estimated Bankruptcy Filing Date - October 19, 2018**

| | | Source | | |
|---|---|---|---|---|
| **Estimated funds available to pay General Unsecured Creditors:** | | | | |
| Estimated Fair Market Value of sale of assets, including net working capital, unadjusted | | Exhibit D | $ | (2,069,141) |
| Less discount for forced sale - between | 20.0% | 30.0% | | n/a |
| **Net after discount for forced sale** | | | | (2,069,141) |
| Less cost of sale - marketing & commissions | | 5.0% | | n/a |
| Less estimated professional fees (sale, claims, distribution, bankruptcy administration, etc) | | | | (100,000) |
| Less secured claims | | Schedule D | | (93,000) |
| Less priority claims (payroll, benefits, employer tax) | | Schedule E | | (63,199) |
| Estimated net funds available to Pay General Unsecured Creditors | | | $ | (2,325,340) |
| **Estimated General Unsecured Creditors** | | Schedule F | $ | 3,749,531 |
| **Estimated Payout to General Unsecured Creditors** | | | | **none** |



EXHIBIT

tables

A



EXHIBIT

tabbies®

B

**Redox Power Systems**
**Projected Quarterly Statement of Cash Flows**
**Bankruptcy Filing Date - October 19, 2018**

|  |  | Variable,<br>Fixed, or<br>Semi Exp | Total<br>Qtr 1 | Total<br>Qtr 2 | Total<br>Qtr 3 | Total<br>Qtr 4 |
|---|---|---|---|---|---|---|
| **Revenue / Gross Profit Sources** | | | | | | |
| | **Government contracts** | | | | | |
| [a] | ARPA-E | | $ 28,282 | $ - | $ - | $ - |
| [a] | NETL | | 74,579 | 78,577 | 79,985 | - |
| [a] | NETL-2 | | 302,160 | 247,500 | 195,000 | 195,859 |
| [a] | NETL-3 | | 46,881 | 35,744 | 35,744 | 23,821 |
| [a] | NETL-4 | | 79,024 | 85,000 | 95,000 | 105,000 |
| [b] | New Project #1 | | - | | | |
| [b] | New Project #2 | | - | | | |
| [b] | New Project #3 | | - | | | |
| | Total Government collections | | 530,926 | 446,821 | 405,729 | 324,681 |
| | | | | | | |
| | **Government contract cost of sales** | | | | | |
| [c] | Payroll - Direct | Variable | (343,420) | (300,000) | (300,000) | (300,000) |
| [d] | Benefits | Variable | (50,202) | (44,732) | (44,732) | (44,440) |
| [e] | Project Supplies | Variable | (72,173) | (25,000) | (25,000) | (25,000) |
| [f] | Services | Variable | (45,313) | (16,000) | (17,600) | (19,360) |
| | **Total Government contract cost of sales** | | (511,108) | (385,732) | (387,332) | (388,800) |
| | | | | | | |
| | **Gross Profit from Government Contracts** | | 19,818 | 61,089 | 18,396 | (64,119) |
| | | | | | | |
| [g] | **Product sales** | | | | | |
| [g] | Unit kilowatts | | - | | | |
| | | | | | | |
| [h] | **Product Revenue** | | - | | | |
| | Price per kilowatt | | | | | |
| | Annual price reduction due to efficiencies | | | | | |
| [i] | **Maintenance Contracts Revenue** | | - | | | |
| | Percent markup on Field Support expense | | | | | |
| | **Total Revenue from Product sales** | | - | | | |
| | | | | | | |
| | **Cost of Product sales** | | | | | |
| [j] | Cost per kilowatt | | | | | |
| | Annual cost reduction due to efficiencies | | | | | |
| | Percent of Internal cost as additional cost at third party | | | | | |
| | Total Cost per kilowatt | | | | | |
| | | | | | | |
| [k] | Cost of production | Variable | - | | | |
| [l] | Add'l Third Party Manufacturing & Distrib. | Variable | - | | | |
| | Total Cost to Produce | | - | | | |
| | | | | | | |
| [m] | Field Support Expense per kW in Service (on CO | Variable | - | | | |
| | **Total Product cost of sales** | | - | | | |
| | | | | | | |
| | **Gross Profit on Product sales** | | - | | | |
| | | | | | | |
| [n] | **Other Income - R&D Tax Credits** | | - | 18,020 | 18,020 | 18,020 |
| | | | | | | |
| | **Operating Expenses** | | | | | |
| [c] | Payroll - Indirect | Semi-Var. | (107,373) | (95,000) | (95,000) | (95,000) |
| [d] | Benefits - Indirect | Semi-Var. | (15,696) | (14,165) | (14,165) | (14,073) |
| [o] | Workman's Comp Ins. | Semi-Var. | (3,593) | (3,593) | (3,950) | (3,950) |
| [e] | Other Supplies | | (3,250) | (5,000) | (5,000) | (5,000) |
| [f] | Services - Manufacturing / Mechanical | Fixed | (11,328) | (4,000) | (4,400) | (4,840) |
| [p] | Rent | Fixed | (32,090) | (32,851) | (32,851) | (32,851) |
| [q] | Insurance | Fixed | (3,405) | (3,405) | (3,405) | (3,405) |
| [r] | Accounting | Fixed | (4,200) | (4,200) | (4,200) | - |
| [v] | Marketing and Website | Fixed | - | | | |
| [w] | Hiring Expense | Semi-Var. | - | | | |
| [s] | Patent Maintenance | Fixed | - | | | |
| [u] | Parking - UMD | Fixed | - | | | |
| [x] | Travel | Semi-Var. | - | | | |

**Redox Power Systems**
**Projected Quarterly Statement of Cash Flows**
**Bankruptcy Filing Date - October 19, 2018**

| | | Variable, Fixed, or Semi Exp | Total Qtr 1 | Total Qtr 2 | Total Qtr 3 | Total Qtr 4 |
|---|---|---|---|---|---|---|
| [y] | Government Compliance Audit | Fixed | - | | | |
| [z] | UL / CE Certification | Fixed | - | | | |
| [aa] | Anchin (Tax Credit Support) | Other | - | | | |
| [ab] | Contingency | Variable | (35,261) | (5,000) | (6,015) | (7,315) |
| | Total Operating expenses | | (216,197) | (167,214) | (168,986) | (166,433) |
| | **R&D expenses** | | | | | |
| [ac] | Cell Fabrication Ramp-Up | Other | (57,791) | - | - | - |
| [ad] | AVL Development | Other | - | | | |
| | Total R&D expenses | | (57,791) | - | - | - |
| | **Restructure costs** | | | | | |
| [ae] | Attorney Restructure | Other | - | - | - | - |
| [af] | Attorney Corporate | Fixed | - | (20,000) | - | - |
| [ag] | Accounting Restructure | Other | (10,500) | (10,500) | - | - |
| [ah] | Pay Creditors | Other | - | - | (34,303) | (68,710) |
| [ai] | Court Costs | Other | (4,626) | (4,626) | - | - |
| [aj] | Professional Services | Other | (8,000) | - | - | - |
| | Total restructure costs | | (23,126) | (35,126) | (34,303) | (68,710) |
| | | | - | | | |
| | | | - | | | |
| | Total revenue | | $ 530,926 | $ 464,841 | $ 423,749 | $ 342,701 |
| | Total cost of revenues | | (511,108) | (385,732) | (387,332) | (388,800) |
| | Total gross profit | | 19,818 | 79,109 | 36,416 | (46,099) |
| | | | - | | | |
| | Less Operating Expenses | | - | | | |
| | Operating expenses | | (216,197) | (167,214) | (168,986) | (166,433) |
| | R&D expenses | | (57,791) | - | - | - |
| | | | - | | | |
| | Net cash flow from operations before restructuring costs | | (254,169) | (88,106) | (132,570) | (212,532) |
| | Less Restructure expenses | | (23,126) | (35,126) | (34,303) | (68,710) |
| | | | - | | | |
| | Net cash flow from operations | | $ (277,296) | $ (123,232) | $ (166,873) | $ (281,242) |
| | **Investing Cash Flows** | | | | | |
| | **Capital Expenditures** | | | | | |
| [ak] | Equipment | Other | $ - | $ - | $ - | $ - |
| [al] | New Patents | Other | (3,000) | (9,000) | - | (3,000) |
| [am] | New NGTF Expenses | Other | (19,500) | (5,000) | - | - |
| [an] | Facility Buildout | Other | - | - | - | - |
| [ao] | Facility Engineering | Other | - | - | - | - |
| | Total Capital Expenditures | | $ (22,500) | $ (14,000) | $ - | $ (3,000) |
| | **Financing Cash Flows** | | | | | |
| [ap] | Loans | | $ 310,000 | $ 65,000 | $ - | $ - |
| | Investment | | - | - | 150,000 | 300,000 |
| | **Net cash flow** | | 10,204 | (72,232) | (16,873) | 15,758 |
| | **Beginning Cash Balance** | | 86,365 | 96,569 | 24,337 | 7,464 |
| | **Ending Cash Balance** | | $ 96,569 | $ 24,337 | $ 7,464 | $ 23,222 |